**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| JOHN ARTHUR BOULTBEE, ) | |
| ) | |
| Petitioner, ) | |
| ) | Case No. 12 C 4002 |
| v. ) | |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION AND ORDER

AMY J. ST. EVE, District Court Judge:

Before the Court is pro se Petitioner John Arthur Boultbee's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. For the following reasons, the Court denies Petitioner's Section 2255 motion and declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

### FACTUAL BACKGROUND

**I.      Charges**

On August 17, 2006, a federal grand jury returned a seventeen-count Third Superseding Indictment against Petitioner and his co-defendants Conrad Black, Peter Atkinson, and Mark Kipnis, all of whom were senior executives at Hollinger International.[1] On January 10, 2007, the government filed a Superseding Information removing some of the allegations from the Third Superseding Indictment. The Superseding Information charged Petitioner and his co-defendants with committing the following offenses: (1) mail and wire fraud in violation of 18 U.S.C. §§

---

[1] Defendants David Radler and Ravelston Corporation Limited pleaded guilty before the 2007 jury trial. Radler agreed to cooperate with the government and testified at trial.

1341, 1343, including the deprivation of the intangible right to honest services in violation of 18 U.S.C. § 1346; (2) money laundering in violation of 18 U.S.C. § 1957; (3) obstruction of justice in violation of 18 U.S.C. § 1512(c)(1); (4) racketeering in violation of 18 U.S.C. § 1962(c); and (5) criminal tax violations in violation of 26 U.S.C. § 7206(2).

## II.     Jury Trial

On July 13, 2007, after extensive pretrial proceedings, approximately four months of trial, and two weeks of jury deliberations, a jury convicted Petitioner and his co-defendants on several counts of the Superseding Information. In particular, the jury convicted Petitioner and his co-defendants on several mail and wire fraud counts in violation of 18 U.S.C. §§ 1341, 1346, involving non-existent covenants not to compete. After the jury convicted Petitioner, the Court sentenced him to 27 months imprisonment in December 2007.

Relevant to this Section 2255 motion is Count Seven of the Superseding Information. Count Seven charged a scheme to defraud involving $600,000 in non-competition payments taken out of the reserves from two transactions – the Forum and Paxton transactions – in which Hollinger International's newspapers were sold. The Superseding Information specifically charged that Petitioner and his co-defendants knowingly caused a mailing in furtherance of the scheme on or about April 9, 2001, which contained four checks: $285,000 for Black; $285,000 for Radler; $15,000 for Petitioner; and $15,000 for Atkinson. To establish Petitioner guilty of Count Seven, the government had to prove beyond a reasonable doubt that: (1) Petitioner knowingly devised or participated in a scheme to defraud or to obtain money or property by means of materially false pretenses, representations, or promises; (2) Petitioner did so knowingly and with the intent to defraud; and (3) a mailing in furtherance of the scheme. *See* 18 U.S.C. §§

2

1341, 1343; *see also United States v. Howard,* 619 F.3d 723, 727 (7th Cir. 2010).

At trial, the government introduced evidence that co-schemer Radler directed $600,000 remaining in the reserves from the Forum and Paxton transactions as supplemental non-compete payments, including $15,000 to Petitioner. Although Petitioner maintains that these payments were legitimate bonuses, the trial evidence established beyond a reasonable doubt that he never received any legitimate bonus payments from any subsidiary of Hollinger International. Also, Petitioner received his check even though he never executed a non-competition agreement and the purchasers never requested any such agreements. Further, the government introduced evidence that Petitioner did not disclose the $15,000 in his proxy questionnaire related to certain United States Securities and Exchange Commission ("SEC") disclosures.

Also relevant to this Section 2255 motion is that the government submitted the fraud counts to the jury on two theories: (1) conventional pecuniary fraud; and (2) a scheme to deprive Hollinger International of its "intangible right of honest services" pursuant to 18 U.S.C. § 1346.

## III. Appeals

Petitioner and his co-defendants appealed to the United States Court of Appeals for the Seventh Circuit bringing the following claims: (1) there was insufficient evidence that they engaged in conventional pecuniary fraud; (2) the government's honest services theory was legally invalid; (3) there was insufficient evidence of fraud and a criminal mailing concerning certain supplemental payments to support the fraud allegation in Count Seven; (4) the Court erred in giving the conscious avoidance ("ostrich") instruction; and (5) the Court should have given an instruction concerning misrepresentations that occurred after the dates of the charged scheme. On June 25, 2008, the Seventh Circuit rejected these arguments and affirmed the

defendants' convictions. *See United States v. Black,* 530 F.3d 596 (7th Cir. 2008).

Thereafter, the United States Supreme Court granted the defendants' petition for certiorari and eventually held that the honest services jury instruction was erroneous because – unless the defendants received a bribe or kickback – 18 U.S.C. § 1346 was unconstitutionally vague. *See Skilling v. United States,* 561 U.S. ___, 130 S.Ct. 2896, 177 L.Ed.2d 619 (2010)*; Black v. United States,* 561 U.S. ___, 130 S.Ct. 2963, 177 L.Ed.2d 695 (2010). The Supreme Court remanded the matter to the Seventh Circuit to determine whether this instructional error was harmless. The parties then filed their Circuit Rule 54 Statements of Position and Responses to the Seventh Circuit. Shortly thereafter, the Seventh Circuit held that the instructional error was harmless as to one of the fraud counts, namely, Count Seven, and remanded the matter for a new trial on the remaining fraud counts. The Seventh Circuit, however, also advised the government to consider dismissing the remaining fraud counts.

In its 2010 opinion on remand, the Seventh Circuit discussed the trial evidence supporting the pecuniary fraud charge in Count Seven:

> [Count Seven] involves payments to the defendants (via Hollinger) of $600,000 in connection with Hollinger's sale to two companies, Forum and Paxton, which to simplify we'll treat as one, of community newspapers; the $600,000 was allegedly compensation for the defendants' promising not to compete with these newspapers after the sale. The defendants don't contend that the money represented management fees owed by Hollinger. The contention rather is that the money was compensation for bona fide covenants not to compete. The contention is implausible because these are small newspapers and the defendants could have no interest in going into competition with them as individuals – for the covenants bind them, not Hollinger or any other company that might want to enter the community-newspaper business. The owners of Forum–Paxton testified that they didn't request such a covenant. Their testimony was not only disinterested but was supported by the clowning note that David Radler, an executive of Hollinger, wrote to the defendants, in which he said that Forum–Paxton had "asked for a 5-year non-compete from Conrad [Black] and me covering not only the states wherein they purchased assets but those states that

4

border the said states. This would leave us only Alaska, Wyoming and Louisiana for us to continue our activities.... I have been assured there is [*sic*] suitable accommodations four [*sic*] our new headquarters in Casper, Wyoming."

What makes the contention that the $600,000 was compensation for covenants not to compete additionally and decisively unbelievable is that there are no covenants. The defendants concede that none was prepared, but attribute the omission to innocent mistake. The concession fatally undermines their challenge to the convictions on this count. Either the failure to prepare covenants was an innocent mistake – in which event the defendants could no more be convicted by a reasonable jury of honest-services fraud than of pecuniary fraud, because a merely careless withholding of services owed a principal by an agent was never criminal fraud under the honest-services provision (or any other provision) of the mail and wire fraud statutes, *United States v. Cochran,* 109 F.3d 660, 667–68 (10th Cir. 1997); *see also United States v. Sorich,* 523 F.3d 702, 707–08 (7th Cir. 2008); *United States v. Bloom,* 149 F.3d 649, 654-55 (7th Cir. 1998) – or no covenants were intended, and the fees were part of the purchase price of the newspapers, owed to Hollinger and stolen by the defendants. No reasonable jury could have acquitted the defendants of pecuniary fraud on this count but convicted them of honest-services fraud.

The defendants argue that maybe the jury believed that the absence of the covenants was an innocent mistake but convicted them because they failed to disclose the payments to the board. The failure to disclose is mentioned in passing in the information, but the evidence at trial, and the closing arguments, focused on whether the absence of a written covenant was merely an oversight or instead proof of pecuniary fraud.

The jury acquitted the defendants on two other counts related to covenants not to compete with Forum-Paxton. But in those instances the fees went to Hollinger, and it is Hollinger that issued covenants not to compete, not the defendants, and Hollinger was a far more plausible entrant into Forum-Paxton's markets than the defendants, as individuals, were. The only rational explanation for the split verdict is that the jury believed that the $600,000 that the defendants received from Forum-Paxton without covenants not to compete, unlike the other transactions with that company, were proceeds of a plain-vanilla pecuniary fraud – and only a pecuniary fraud. For had the jury believed that a failure to disclose the fees for promising not to compete with the little newspapers was honest-services fraud, it would have convicted the defendants on *all* the fraud counts, because the defendants disclosed those fees neither to the board nor to the shareholders; and the jury didn't do that.

When to this logical point are added the absence of a written record of a $600,000 transaction, the disinterested testimony by the newspapers' buyers that

5

> they did not request covenants not to compete, Radler's implicit boast that the covenants were fabrications, and the absence of an economic reason for them (because the defendants had no conceivable interest in becoming individual publishers of small community newspapers), the evidence of pecuniary fraud is so compelling that no reasonable jury could have refused to convict the defendants of it.

*United States v. Black,* 625 F.3d 386, 392-93 (7th Cir. 2010).

On remand to this Court, the government elected to dismiss the remaining fraud counts remanded for retrial, and thus Petitioner stands convicted of one count of pecuniary fraud as charged in Count Seven. On February 10, 2011, the Court entered an amended Judgment and Commitment Order. On April 4, 2011, Petitioner filed a notice of appeal. The Seventh Circuit dismissed the appeal on Petitioner's own motion on July 6, 2011. By June 2009, Petitioner completed his prison sentence. Because Petitioner filed the present motion before his supervised release term ended, the government does not challenge the "in custody" requirement under Section 2255. *See Torzala v. United States,* 545 F.3d 517, 521 (7th Cir. 2008).

## LEGAL STANDARD

"[R]elief under § 2255 is an extraordinary remedy because it asks the district court essentially to reopen the criminal process to a person who already has had an opportunity for full process." *Almonacid v. United States,* 476 F.3d 518, 521 (7th Cir. 2007). Under Section 2255, relief "is available only when the 'sentence was imposed in violation of the Constitution or laws of the United States,' the court lacked jurisdiction, the sentence was greater than the maximum authorized by law, or it is otherwise subject to collateral attack." *Torzala*, 545 F.3d at 521 (quoting 28 U.S.C. § 2255). A Section 2255 motion is not a substitute for a direct criminal appeal nor is it a means by which a defendant may appeal the same claims a second time. *See Varela v. United States,* 481 F.3d 932, 935 (7th Cir. 2007) (Section 2255 motion is "neither a

recapitulation of nor a substitute for a direct appeal.") (citation omitted); *White v. United States,* 371 F.3d 900, 902 (7th Cir. 2004) ("Invoking the doctrine of the law of the case, the courts, including our court, forbid a prisoner to relitigate in a collateral proceeding an issue that was decided on his direct appeal.").

## ANALYSIS

Construing pro se Petitioner's Section 2255 motion liberally, *see Munson v. Gaetz,* 673 F.3d 630, 633 (7th Cir. 2012), he brings the following claims: (1) there was no trial evidence supporting the fact that at the time of the receipt of the payment at issue in Count Seven, Petitioner knew that it was a non-compete payment; (2) even if Petitioner knew the payment was a non-compete payment, there was no trial evidence that he knew that the non-compete agreement did not exist; (3) the timing of Hollinger International's SEC disclosures regarding the non-compete payments cannot be the basis of his conviction; (4) he was not required to disclose his non-compete payment in his 2002 Questionnaire for Directors and Officers, therefore, this cannot be a basis of his conviction; (5) the government did not present any trial evidence that he was aware of any falsehoods in Hollinger International's disclosures; and (6) the Court erred in dismissing Count Seven as to his co-defendant Mark Kipnis because there was more evidence in the record regarding the supplemental payment as to Kipnis than evidence regarding his supplemental payment.

Petitioner made these arguments to the Seventh Circuit on direct appeal. (07-4080, R. 37, Open. Brief, at 23-24, 27, 58, 68-69.) And, as the Seventh Circuit teaches, a "§ 2255 motion is 'neither a recapitulation of nor a substitute for a direct appeal,'" therefore, "[i]ssues that were raised on direct appeal may not be reconsidered on a § 2255 motion absent changed

7

circumstances." *Varela,* 481 F.3d at 935-36 (citations omitted); *see also Olmstead v. United States,* 55 F.3d 316, 319 (7th Cir. 1995) ("in the absence of changed circumstances of fact or law, we will not reconsider an issue which was already decided on direct appeal").

Nevertheless, Petitioner contends that although these arguments were made on direct appeal, he did not make these arguments after the United States Supreme Court remanded the matter to the Seventh Circuit in 2010. Contrary to Petitioner's argument, the Seventh Circuit addressed Petitioner's conviction for pecuniary fraud in the context of Petitioner's similar arguments made in his Circuit Rule 54 Statement and Response. (07-4080, R. 93, Rule 54 Stmt., at 25-26; R. 99, Resp. at 8-9.) *See United States v. Black,* 625 F.3d 386, 392-94 (7th Cir. 2010); *see also Black*, 530 F.3d at 600 ("The evidence established a conventional fraud, that is, a theft of money or other property from Hollinger by misrepresentations and misleading omissions amounting to fraud, in violation of 18 U.S.C. § 1341.").

In any event, Petitioner also maintains that there has been a change in circumstances, namely, the Supreme Court's 2010 decisions regarding the honest services fraud statute, that allows the Court to reconsider his already-made appellate arguments. *See Skilling v. United States*, 561 U.S. ___, 130 S.Ct. 2896, 177 L.Ed.2d 619 (2010); *Black v. United States,* 561 U.S. ___, 130 S.Ct. 2963, 177 L.Ed.2d 695 (2010). Petitioner, however, does not stand convicted of fraud based on the honest services statute, but, instead, stands convicted of one count of pecuniary fraud. In short, the *Black* and *Skilling* decisions do not impact Petitioner's pecuniary fraud conviction, and thus these decisions do not constitute a change in circumstances allowing Petitioner to re-open the arguments he made on direct appeal. *See Varela,* 481 F.3d at 936.

Petitioner's last argument in his Section 2255 motion is that because the defendants'

appeal focused on his co-defendant Conrad Black, he did not get to argue issues separately and "the most important argument for him was not even considered by the Circuit Court." Viewing Petitioner's pro se Section 2255 motion liberally, *see Munson,* 673 F.3d at 633, it appears that Petitioner is bringing a claim that his appellate counsel was constitutionally ineffective in violation of the Sixth Amendment.

As with ineffective assistance of trial counsel claims, courts apply the two-prong test set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), to evaluate the effectiveness of appellate counsel. *See Suggs v. United States,* 513 F.3d 675, 678 (7th Cir. 2008). Under the *Strickland* performance prong, an appellate counsel's performance is constitutionally deficient if counsel fails to appeal an issue that is obvious and clearly stronger than the claims counsel raised on appeal. *See id.; see also Johnson v. Thurmer,* 624 F.3d 786, 793 (7th Cir. 2010). To establish the *Strickland* prejudice prong, Petitioner must show that "there is a reasonable probability that the issue his appellate attorney failed to raise would have altered the outcome of the appeal, had it been raised." *Brown v. Finnan,* 598 F.3d 416, 425 (7th Cir. 2010); *see also Suggs,* 513 F.3d at 678.

In his Section 2255 motion, Petitioner contends that the most important argument was that the government did not present any evidence at trial that he knew the reason for the $15,000 payment or that he knew the $15,000 was a non-compete payment in the first instance. Petitioner's appellate counsel, however, did make this argument on appeal and the Seventh Circuit addressed Petitioner's contention in the context of the ostrich instruction:

> Remember that the defendants received the payments in question not from Hollinger but from APC [American Publishing Company], which the evidence showed did not owe them any management fees. If you receive a check in the mail for $1 million that you have no reason to think you're entitled to, you cannot

9

> just deposit it and when prosecuted for theft say you didn't know you weren't entitled to the money – that it might have been a random gift from an eccentric billionaire. You would have strongly suspected that you weren't entitled to the money and you would therefore have had a duty to investigate. By shutting your eyes you tacitly confessed your all-but-certain knowledge that you were stealing the money.

*Black,* 530 F.3d at 604-05 (citations omitted); *see also id*. at 599 ("The checks were drawn on APC, though the evidence was that the defendants had no right to management fees from that entity, and were backdated to the year in which APC had sold most of its newspapers. The purpose of the backdating was – or so the jury could find – to make the compensation for the covenants not to compete seem less preposterous.").

In sum, Petitioner's last argument is factually baseless because appellate counsel and the Seventh Circuit addressed Petitioner's argument that there was no evidence that he knew the reason for the $15,000 payment or knew that it was a non-compete payment. As such, any such ineffective assistance of counsel claim fails.

## CERTIFICATE OF APPEALABILITY

Under the 2009 Amendments to Rule 11(a) of the Rules Governing Section 2255 Proceedings, the "district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Therefore, the Court must determine whether to grant Petitioner a certificate of appealability pursuant to 28 U.S.C. § 2253(c)(2) in the present Memorandum, Opinion, and Order.

Under 28 U.S.C. § 2253(c)(2), a petitioner does not have the absolute right to appeal a district court's denial of his Section 2255 motion, instead, he must first request a certificate of appealability. *See Miller-El v. Cockrell,* 537 U.S. 322, 335, 123 S.Ct. 1029, 154 L.Ed.2d 931 (2003); *Lavin v. Rednour*, 641 F.3d 830, 832 (7th Cir. 2011). A petitioner is entitled to a

certificate of appealability only if he can make a substantial showing of the denial of a constitutional right. *See Miller-El,* 537 U.S. at 336; *Narvaez v. United States,* 641 F.3d 877, 881 (7th Cir. 2011); 28 U.S.C. § 2253(c)(2). Under this standard, Petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El,* 537 U.S. at 336 (quoting *Slack v. McDaniel,* 529 U.S. 473, 484, 120 S.Ct. 1595, 146 L.Ed.2d 542 (2000)).

Here, Petitioner has not established that jurists of reason would debate that his Section 2255 motion should have been resolved differently in light of the fact that he raised all but one of his Section 2255 arguments on direct appeal. *See Varela,* 481 F.3d at 935. Furthermore, Petitioner cannot establish that jurists of reason would debate his ineffective assistance of appellate counsel claim because it is factually baseless. Therefore, the Court declines to certify any issues for appeal.

## CONCLUSION

For these reasons, the Court denies Petitioner's motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 and declines to certify any issues for appeal pursuant to 28 U.S.C. § 2253(c)(2).

**Dated:** August 14, 2012

**ENTERED**

_____
**AMY J. ST. EVE**
**United States District Court Judge**